Bryant C. Boren (State Bar No. 260602)
bryant.c.boren@bakerbotts.com
Ariel D. House (State Bar No. 280477)
ariel.house@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

[*Additional counsel identified on signature page*]

*Counsel for Defendants Computer Sciences
Corporation, DXC Technology Company,
and ServiceMesh, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY TWYNHAM, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COMPUTER SCIENCES CORPORATION, a Nevada corporation, DXC TECHNOLOGY COMPANY, a Nevada corporation, and SERVICEMESH, INC., a Delaware corporation,<br><br>Defendants. | Case No. 2:17-cv-08107-SVW-JEM<br><br>**DEFENDANTS' ANSWER TO THE SECOND AMENDED COMPLAINT**<br><br><u>Action Filed</u>: November 6, 2017 |

Defendants Computer Sciences Corporation ("CSC"), DXC Technology Company ("CSC"), and ServiceMesh, Inc.[1] ("ServiceMesh," and collectively with CSC and DXC, "Defendants"), by and through their undersigned counsel, hereby submit their Answer to the allegations in the Second Amended Complaint ("SAC") filed by Plaintiff Bradley Twynham on August 14, 2018.

Except as expressly admitted herein, Defendants deny the allegations in the SAC.

The SAC contains section titles and other organizational headings to which no response is required.  To the extent any such section titles or other organizational headings in the SAC are construed to contain substantive allegations to which a response is required, they are denied.

To the extent Defendants use certain terms from the SAC in this Answer, such use is not an acknowledgment or admission of any characterization that Twynham seeks to associate with any such terms.

## THE PARTIES

1.      Defendants admit the allegations in Paragraph 1.

2.      Defendants admit the allegations in Paragraph 2.

3.      Defendants admit that DXC is a Nevada corporation with its principal place of business in Tysons Corner, Virginia.  Defendants deny all other allegations in Paragraph 3.

4.      Defendants admit that ServiceMesh was a Delaware corporation whose previous principal place of business was in Santa Monica, California. Defendants admit that ServiceMesh was acquired by CSC on November 15, 2013 (the "Acquisition") pursuant to an agreement that was entered into on October 29, 2013.  Defendants admit that all of ServiceMesh's equity was acquired by CSC. Defendants admit that after the Acquisition, CSC conducted business from

---

[1]      ServiceMesh, Inc. is now known as CSC Agility Platform, Inc.

ServiceMesh's former location in Santa Monica, and certain ServiceMesh employees became CSC employees.   Defendants admit that Twynham was involved in procuring contracts from the Commonwealth Bank of Australia ("CBA") after the Acquisition.  Defendants deny all other allegations in Paragraph 4.

## JURISDICTION AND VENUE

5.      Paragraph 5 contains characterizations of claims and conclusions of law to which no response is required.

6.       Paragraph 6 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit that Twynham is an alien subject of a foreign state, Defendants are citizens of different states, and the amount in controversy exceeds $75,000.

7.      Paragraph 7 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny that a substantial part of the events or omissions on which Twynham's claims are based occurred in Los Angeles County, California.  Defendants also deny that Twynham was ever employed by ServiceMesh or a ServiceMesh affiliate in Los Angeles County, California, before on or about March 15, 2014.  Defendants admit that Twynham was employed by CSC or a CSC affiliate in Los Angeles County from on or about March 15, 2014 until on or about August 7, 2015.

8.      Paragraph 8 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny that a substantial part of the events or omissions on which Twynham's claims are based occurred in Los Angeles County, California.  Defendants admit that Twynham was employed by CSC or a CSC affiliate in Los Angeles County from on or about March 15, 2014 until on or about August 7, 2015.

## BACKGROUND

**A. Mr. Twynham's Employment with ServiceMesh and Computer Sciences Corporation ("CSC").**

9. Defendants admit that Twynham was a consultant for ServiceMesh or a ServiceMesh affiliate beginning on or about December 21, 2009. Defendants admit that as of November 13, 2013, Twynham was employed by ServiceMesh or a ServiceMesh affiliate. Defendants deny all other allegations in Paragraph 9.

10. Defendants deny the allegations in Paragraph 10.

11. Defendants admit that Eric Pulier principally worked in the Santa Monica office of ServiceMesh before the Acquisition, which became the Santa Monica office of CSC after the Acquisition. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 11, and therefore deny them.

12. Defendants deny the allegations in Paragraph 12.

13. Defendants admit that Twynham had close relationships with Keith Hunter and Jon Waldron, senior CBA executives. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 14, and therefore deny them.

14. To the extent Paragraph 14 purports to characterize the contents of a document—namely, the Equity Purchase Agreement ("EPA") between CSC, ServiceMesh, ServiceMesh's equityholders, and Shareholders Representative Services LLC ("SRS"), as the equityholders' representative—Defendants respectfully refer the Court to such document for its contents and deny any allegations that are inconsistent with the contents or legal effect of that document. Defendants admit that Twynham became an employee of CSC Australia Pty Ltd. ("CSC Australia")[2] on November 15, 2013 and had the position of "Senior

---

[2] CSC Australia is now known as DXC Technology Australia Pty Limited.

Principal: Complex Deals."  Defendants deny that Twynham became an employee or "Senior Principal: Complex Deals" of CSC on November 13, 2013.  Defendants deny that at that time CSC requested that Twynham work permanently in CSC's Santa Monica office as soon as he could make arrangements to do so, and that Twynham agreed.  Defendants deny that Twynham subsequently temporarily returned to Australia to make arrangements to move to Santa Monica with his family.  Defendants deny that Twynham was in constant contact with Jeff Drake and Eric Pulier in February 2014 for the purposes of CBA's performance pursuant to what the SAC defines as the CBA Contract.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 14, and therefore deny them.

**B. Mr. Twynham's RSU Agreements with CSC**

15.     Defendants admit that on or about November 15, 2013, Twynham and CSC entered into the 2011 Omnibus Incentive Plan International Service Based Restricted Stock Unit Award Agreement ("RSU Agreement").  Paragraph 15 purports to characterize the contents of the RSU Agreement.  Defendants respectfully refer the Court to the RSU Agreement for its contents and deny any allegations that are inconsistent with the contents or legal effect of that document.

16.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 16, and therefore deny them.

17.     Defendants admit the allegations in Paragraph 17.

**C. The Equity Purchase Agreement Between CSC and ServiceMesh.**

18.     Defendants admit that on or about October 29, 2013, CSC, ServiceMesh, the equityholders of ServiceMesh, and SRS, as the equityholders' representative, entered into the EPA.  Paragraph 18 purports to characterize the contents of the EPA.  Defendants respectfully refer the Court to the EPA for its

contents and deny any allegations that are inconsistent with the contents or legal effect of that document.  Defendants deny that CSC assumed all of ServiceMesh's liabilities, that ServiceMesh had any obligations to Twynham, and that CSC assumed any such obligations.

19.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 18, and therefore deny them.

20.    Paragraph 20 purports to characterize the contents of the EPA. Defendants respectfully refer the Court to the EPA for its contents and deny any allegations that are inconsistent with the contents or legal effect of that document. Defendants admit that after the earnout period, in February 2014, CSC calculated $29.7 million in Measurement Revenue, which resulted in $9.7 million of Measurement Revenue in excess of the $20 million floor, and an approximately $98 million Earnout Payment Amount.

21.    Defendants admit the allegations in Paragraph 21.

**D. The ServiceMesh-McAfee Contract with Commonwealth Bank of America.**

22.     Defendants admit that Twynham was involved in securing an agreement pursuant to which CBA would purchase security technology products manufactured by McAfee, Inc. from ServiceMesh (the "CBA Contract"), but Defendants deny that there were any negotiations between CBA and ServiceMesh or that any such negotiations occurred before CSC and ServiceMesh entered into the EPA on October 29, 2013. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 22, and therefore deny them.

23.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation in Paragraph 23 that Twynham met with CBA

executives in California on at least four occasions in 2014 under direction from Eric Pulier and therefore deny that allegation. Defendants deny all other allegations in Paragraph 23.

24.    Defendants deny the allegations in Paragraph 24.

25.    Defendants admit that on March 19, 2014, approximately $5.6 million was transferred from the exchange agent account to a bank account associated with TechAdvisors LLC. Defendants admit that Eric Pulier was the founder and part owner of ServiceMesh before the Acquisition, and was the sole signatory on the TechAdvisors bank account. Defendants deny that Twynham was unaware of the transfer to TechAdvisors.

26.    Defendants admit that from April to September 2014, approximately $4.85 million was transferred from the TechAdvisors bank account to accounts in the name of Ace, Inc. and Andrew Goldstein. Defendants admit that Andrew Goldstein was a longtime friend of Pulier and was associated with Ace.

27.    Defendants admit that Jon Waldron, Keith Hunter, and Hans Gyllstrom received approximately $2,633,647.41 in transfers from the Ace bank account. Defendants admit that Waldron and Hunter were IT executives at CBA, and that Gyllstrom was an IT consultant to CBA. Defendants deny that Twynham was unaware of the transfers from the Ace bank account to Waldron, Hunter, and Gyllstrom. Defendants deny all other allegations in Paragraph 26.

28.    Defendants admit that CBA discovered the transfers from Ace to Hunter and Waldron in October 2014, and that Waldron and Hunter were both terminated. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 28, and therefore deny them.

29.    Defendants deny the allegations in Paragraph 29.

**E. Twynham is Falsely Accused of Being Involved with Pulier's Wrongdoing Based on His Involvement with the CBA Contract, Both Before and After it was Executed.[3]**

30.     Defendants deny the allegations in Paragraph 30.

31.     Defendants admit that Twynham moved to California in March 2014. Defendants admit that during this time period, Twynham sent and received emails and texts from Pulier and Waldron.  Defendants deny all other allegations in Paragraph 31.

32.     Defendants admit that multiple criminal investigations and civil lawsuits resulted from the fraudulent scheme described in part in the SAC. Defendants deny all other allegations in Paragraph 32.

**F.  United States of America v. Twynham Civil Forfeiture Lawsuit.**

33.     Defendants admit the allegations in Paragraph 33.

34.     Paragraph 34 purports to characterize the contents of documents— namely, pleadings filed in the Forfeiture Action.  Defendants respectfully refer the Court to such documents for their contents and deny any allegations that are inconsistent with the contents or legal effect of those documents.

35.     Defendants admit that according to the docket entries from the Forfeiture Action, the United States Government seized cash in one of Twynham's account.  Defendants deny that Twynham had no knowledge or involvement with the Pulier and other payments at issue.

36.     Defendants admit that Twynham's attorneys filed a motion to dismiss and served discovery responses in the Forfeiture Action, and that the Forfeiture Action was stayed.  Paragraph 36 purports to characterize the contents of a document—namely, the Consent Judgment filed in the Forfeiture Action. Defendants respectfully refer the Court to that document for its contents and deny

---

[3]     Defendants deny the allegations stated in this heading.

any allegations that are inconsistent with the contents or legal effect of that document.  Defendants deny that Twynham settled the Forfeiture Action because he was unable to sustain the cost and risk of litigation.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

### (Against Defendants CSC and DXC)

37.    Defendants repeat and incorporate each and every response to the foregoing paragraphs as though set forth fully herein.

38.    Paragraph 38 purports to characterize the content of the RSU Agreement.  Defendants respectfully refer the Court to the RSU Agreement for its contents and deny any allegations that are inconsistent with the contents or legal effect of that document.

39.    Paragraph 39 purports to characterize the content of the RSU Agreement.  Defendants respectfully refer the Court to the RSU Agreement for its content and deny any allegations that are inconsistent with the contents or legal effect of that document.

40.    Paragraph 40 purports to characterize the content of the RSU Agreement.  Defendants respectfully refer the Court to the RSU Agreement for its content and deny any allegations that are inconsistent with the contents or legal effect of that document.

41.    Defendants deny the allegations in Paragraph 41.

42.    Defendants admit that CSC terminated Twynham's employment on or about August 7, 2015.  Defendants deny all other allegations in Paragraph 42.

43.    Defendants deny the allegations in Paragraph 43.

44.    Defendants deny the allegations in Paragraph 44.

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA LABOR CODE § 2802

### (Against All Defendants)

45.     Defendants repeat and incorporate each and every response to the foregoing paragraphs as though set forth fully herein.

46.     In part because some of the dates in Paragraph 46 are incorrect, Defendants deny the allegations in Paragraph 46.

47.     Paragraph 47 purports to characterize the contents of a statute. Defendants respectfully refer the Court to that statute for its contents and deny any allegations that are inconsistent with the contents or legal effect of that statute.

48.     Paragraph 48 purports to characterize the contents of case law. Defendants respectfully refer the Court to that case law for its contents and deny any allegations that are inconsistent with the contents or legal effect of that case law.

49.     Defendants deny that it is illegal for any employer to attempt to obtain a waiver of California Labor Code Section 2802.  Paragraph 49 purports to characterize case law.  Defendants respectfully refer the Court to that case law for its contents and deny any allegations that are inconsistent with the contents or legal effect of that case law.

50.     Defendants lack knowledge or information sufficient to form a belief about the truth of Twynham's allegations regarding the amount of his legal fees and costs and therefore deny those allegations.   Defendants deny all other allegations in Paragraph 50.

51.     Defendants admit that Twynham moved from Australia to California in March 2014.  Defendants deny all other allegations in Paragraph 51.

52.     Paragraph 52 purports to characterize the content of the Consent Judgment from the Forfeiture Action.  Defendants respectfully refer the Court to

that document for its contents and deny any allegations that are inconsistent with the contents or legal effect of document.  Defendants deny that Twynham's acts were not unlawful and that he did not believe them to be unlawful.

53.    Defendants deny the allegations in Paragraph 53.

54.    Defendants deny the allegations in Paragraph 54.

55.    Paragraph 55 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 55.

56.    Defendants deny the allegations in Paragraph 56.

## THIRD CAUSE OF ACTION

## UNFAIR COMPETITION

## IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.

### (Against All Defendants)

57.    Defendants repeat and incorporate each and every response to the foregoing paragraphs as though set forth fully herein.

58.    Defendants deny the allegations in Paragraph 58.

59.    Defendants deny the allegations in Paragraph 59.

60.    Defendants deny the allegations in Paragraph 60.

61.    Defendants deny the allegations in Paragraph 61.

62.    Defendants deny the allegations in Paragraph 62.

## PRAYER FOR RELIEF

63.    Defendants deny the allegations contained in the Prayer for Relief and further deny that Twynham is entitled to the relief alleged in the Complaint.

## DEFENSES

Defendants assert the following defenses.  By doing so, Defendants do not assume the burden of proof for any issue as to which the law places the burden of

proof on Twynham.  Defendants reserve the right to assert any other defenses or claims if and when they become available.

FIRST DEFENSE

Twynham's claims are barred in whole or in part by the applicable statutes of limitations.

SECOND DEFENSE

Twynham's claims against DXC are barred because no contract exists between DXC and Twynham, and Twynham was never an employee of DXC.

THIRD DEFENSE

Twynham's claim for breach of contract is barred because the conditions precedent that were required for Twynham to receive the unvested restricted stock units were not performed or did not occur.

FOURTH DEFENSE

Twynham asserted his claim for breach of contract in the wrong jurisdiction.

FIFTH DEFENSE

Twynham's claim for breach of contract is barred because he was terminated for Cause and therefore was not entitled to any portion of the unvested restricted stock units.

SIXTH DEFENSE

Twynham's claims for violation of California Labor Code Section 2802 and California Business & Professions Code Section 17200 are barred because Twynham is not entitled to the benefits of those laws.  Twynham was not a California employee when his underlying conduct occurred.

SEVENTH DEFENSE

Twynham's claims for violation of California Labor Code Section 2802 and California Business & Professions Code Section 17200 are barred because

Twynham was not an employee of any of the Defendants when his underlying conduct occurred.

EIGHTH DEFENSE

Twynham's claims for violation of California Labor Code Section 2802 and California Business & Professions Code Section 17200 are barred in whole or in part because the legal expenses he incurred were not based on any employment in California, but rather were based on his status as a former ServiceMesh equityholder who received funds traceable to the fraudulent scheme described in part in the SAC.

NINTH DEFENSE

Twynham's claims for violation of California Labor Code Section 2802 and California Business & Professions Code Section 17200 are barred because Twynham did not incur fees or expenses in direct consequence of the discharge of his duties to any of the Defendants or his obedience to any of the Defendants' directions, but rather in pursuit of his own ends for his own personal purposes.

TENTH DEFENSE

Twynham's claims for violation of California Labor Code Section 2802 and California Business & Professions Code Section 17200 are barred because Twynham knew his actions were unlawful.

ELEVENTH DEFENSE

Twynham's claims for violation of California Labor Code Section 2802 and California Business & Professions Code Section 17200 are barred in part because Twynham is not entitled to indemnification for his fees and expenses incurred in connection with the lawsuit styled *Computer Sciences Corporation v. Eric Pulier, et al*., C.A. No. 11011-CB, in the Court of Chancery of the State of Delaware. An employee sued by his employer is not entitled to reimbursement for the costs of defending against the lawsuit because the reimbursement obligation in Section

2802 is phrased in terms of indemnity, which implies an obligation to pay a judgment entered or expenses incurred in a lawsuit by a third party.

### TWELFTH DEFENSE

Twynham's claims for violation of California Labor Code Section 2802 and California Business & Professions Code Section 17200 are barred in part because Twynham is not entitled to indemnification for his fees and expenses incurred in connection with any criminal investigation.

### THIRTEENTH DEFENSE

Twynham's claims for violation of California Labor Code Section 2802 and California Business & Professions Code Section 17200 are barred in part because Twynham did not tender the defense of the Forfeiture Action to Defendants or tender a reasonable defense.

### FOURTEENTH DEFENSE

Twynham's claims are barred in whole or in part by the doctrine of unclean hands.

### FIFTEENTH DEFENSE

Twynham's claims are barred in whole or in part by the doctrines of accord and satisfaction, estoppel, payment, release, and waiver.   In his Letter of Transmittal, Twynham "fully, forever, irrevocably and unconditionally waive[d], release[d] and discharge[d]" ServiceMesh and CSC and each of their successors from "any and all actions, causes of action, suits, debts, covenants, contracts, controversies, agreements, promises, damages, judgments, orders, liabilities, obligations, executions, claims and demands whatsoever . . . based upon any theory of federal, state, or local statutory, regulatory or common law, or in equity, and any and all claims and demands of whatever kind or character . . . that may be or could have been asserted . . . with respect to or arising during or in connection with . . . the period commencing at the beginning of time and continuing through

[November 15, 2013] relating to [ServiceMesh] and its Affiliates and arising from or relating to [Twynham's] ownership of securities of [ServiceMesh] . . . or [his] employment by [ServiceMesh]."

## **DEFENDANTS' PRAYER FOR RELIEF**

WHEREFORE, Defendants pray that:

1.      The SAC be dismissed in its entirety;

2.      Judgement be awarded in favor of Defendants and against Twynham on each claim set forth in the SAC;

3.      Defendants be awarded their reasonable attorney's fees and costs incurred with their defense of this action; and

4.      Defendants be awarded any other such relief that the Court may deem just and proper.

## **DEFENDANTS' DEMAND FOR JURY TRIAL**

Defendants respectfully request a jury trial on all issues for which they have a right to a jury trial under the Federal Rules of Civil Procedure.

Dated: August 28, 2018          Respectfully submitted,

                                By: /s/ *Bryant C. Boren*
                                Bryant C. Boren
                                bryant.c.boren@bakerbotts.com
                                Ariel D. House
                                ariel.house@bakerbotts.com
                                BAKER BOTTS L.L.P.
                                1001 Page Mill Road
                                Building One, Suite 200
                                Palo Alto, CA 94304
                                Telephone: (650) 739-7500
                                Facsimile: (650) 739-7699

                                Thomas E. O'Brien (admitted *pro hac vice*)
                                tom.obrien@bakerbotts.com
                                BAKER BOTTS LLP
                                2001 Ross Avenue
                                Dallas, TX 75201
                                Telephone: (214) 953-6934
                                Facsimile: (214) 661-4934

                                *Counsel for Defendants Computer Sciences
                                Corporation, DXC Technology Company, and
                                ServiceMesh, Inc.*

1  **CERTIFICATE OF SERVICE**

2       I hereby certify that on August 28, 2018, I electronically filed the above

3  document with the U.S. District Court for the Central District of California by

4  using the CM/ECF system.  All participants in the case are registered CM/ECF

5  users who will be served by the CM/ECF system.

6

7                    /s/  *Bryant C. Boren*
                     Bryant C. Boren
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28